Gil Graber v. Commissioner.
Graber v. Commissioner
Docket No. 11075.
United States Tax Court
1948 Tax Ct. Memo LEXIS 270; 7 T.C.M. (CCH) 2; T.C.M. (RIA) 48001; January 14, 1948
*270 Held, that the wife of petitioner is not a partner, for income tax purposes, in the partnership of Gil Graber & Company of which petitioner was a member. Albert J. Gould, Esq., for the petitioner. George E. Gibson, Esq., for the respondent. TYSON Memorandum Findings of Fact and Opinion TYSON, Judge: The respondent determined a deficiency of $13,035.51 in income and victory tax against the petitioner for the year 1943. The deficiency was based on the inclusion in petitioner's income of the amount of $19,241.41 reported in her return for that year by petitioner's wife, Ruth Graber, as her income from the partnership of Gil Graber & Company. The sole issue presented is whether, for income tax purposes, petitioner's wife was a member of the partnership of Gil Graber & Company during the taxable year. Findings of Fact Petitioner resides in Denver, Colorado. He and his wife, Ruth Graber, were married in Chicago, Illinois in July 1916, at which time he was 29 and she was 28 years old. They have one child, a daughter aged 24, who was in a boarding school from 1937 through 1943. Prior to her marriage petitioner's wife had attended the Brooklyn Training School *271 for Teachers, the College of the City of New Yok5, and Dartmouth, majoring in education and taking a course in economics as a side line. She had taught for seven years in New York City grade schools. Petitioner had gone through the eighth grade in public schools. Immediately after their marriage petitioner and his wife lived on a farm in Wisconsin until 1921 when they moved to St. Paul, Minnesota, where they resided for two or three years, then moving to Omaha, Nebraska. They resided in Omaha until sometime in 1931 when they moved to Denver, Colorado where they have resided ever since. While they resided in St. Paul and Omaha and while they resided in Denver up to 1935 petitioner worked on a salary for Rosenstock Bros., a firm engaged in the buying and selling of cattle. At the time of their marriage Ruth Graber had approximately $2,000 which had accumulated from an inheritance from her mother and from money saved out of her earnings as a school teacher. At that time petitioner had no money of his own. During a period of six months after their marriage Mrs. Graber gave petitioner the $2,000 to be used as a joint fund for the purchase of cattle to feed on the farm and the resale thereof *272 and they agreed that Mrs. Graber would share in the profits from these operations, and that they would be partners. The $2,000 was used in the purchase of cattle to feed on the farm, which were thereafter sold. When they moved to St. Paul and later to Omaha and to Denver in 1931 petitioner and Mrs. Graber had approximately $3,000 which was on deposit in a bank in either St. Paul or Omaha, or in a safe deposit box, and which had been realized from the cattle operations on the farm. While in the banks on deposit it was in a joint account of petitioner and Mrs. Graber. In about 1932 while still working on a salary for Rosenstock Bros. petitioner opened an account in The Denver National Bank in his own name in an undisclosed amount from an undisclosed source. This account was closed in October 1938 by transfer of the $782.90 credit balance therein to an account of "Gilmore J. Graber and Ruth Graber". The credit in the latter account increased to $17,168.05 in February 1942 and in April 1942 the account was closed by transferring the credit balance of $2,951.85 therein to a personal account of petitioner. It was through this Denver National Bank joint account that the independent cattle *273 transactions hereinafter mentioned while petitioner was in partnership with Miller were operated. After leaving the employ of Rosenstock Bros. petitioner, in 1935, acquired a working interest in a cattle buying and selling business with John Hall, investing $5,000 in that business. Petitioner severed his connection with Hall in 1937 and formed a partnership with Jim Miller, investing approximately $5,000 in that partnership for which he received a one-half working interest. During the time petitioner was with Miller he bought and sold cattle independently of the partnership, Miller not wishing to participate in those transactions, and those transactions were, as above stated, conducted through the joint bank account of petitioner and his wife with The Denver National Bank. While engaged in the business of the Miller partnership, and in his independent transactions, petitioner made many cattle buying trips by automobile on most of which, especially all long trips, Mrs. Graber accompanied him. On those trips when she accompanied petitioner Mrs. Graber drove the automobile, and kept the records of purchases in the hotel where they might be stopping. She received telephone messages *274 from people desiring to sell cattle and relayed such messages to petitioner. She entertained customers on these trips and read quotations from the daily papers on the cattle and grain markets. While not accompanying petitioner on trips Mrs. Graber was in Denver and would entertain customers and put through bank drafts for cattle sold, the drafts being sent her by Graber, and when they were paid she would transmit information thereof to Graber so that he would know the condition of the bank account. Also while in Denver she would take "care of messages and that sort of thing". Prior to the spring of 1942 conversations began between petitioner and his wife and Max Rosenstock of Iowa regarding the forming of a limited partnership. For a time Mrs. Graber objected to the formation of the partnership because she wanted petitioner to "go on for himself and I wanted him not to form a partnership with Mr. Rosenstock". However, in the spring of 1942 it was agreed among the three that a partnership would be formed by them. Before agreeing to the partnership Mrs. Graber insisted that she should decide any argument arising between Rosenstock and petitioner. It was also agreed that Mrs. Graber *275 would accompany petitioner on his automobile trips and do the driving; that when they were on those trips she was to relay to petitioner telephone messages from people calling up to say they had cattle to sell; that she should keep the records necessary to be made on the trips and transmit them to the Denver office; and that she would do such entertaining as might "come up". On June 16, 1942, petitioner and Max Rosenstock executed a "Certificate of Limited Partnership" which was recorded in the office of the clerk recorder of Denver, Colorado on July 10, 1942. This instrument provided that petitioner should be the general partner and Rosenstock a limited partner; that its business should be that of buying and selling cattle, with its principal place of business in Denver; that the partnership should exist for an indefinite period; that Rosenstock should contribute $10,000 in cash; that Rosenstock should receive one-half of all net profits, after first deducting compensation to be paid partners; that there should be no right to admit additional limited partners; and that the affairs and management of the partnership should be under the direction and control of petitioner who should *276 receive reasonable monthly compensation for his services. On August 6, 1942, petitioner drew a check for $10,000 on his personal account with The Denver National Bank as a capital contribution to the limited partnership. The limited partnership transacted business only in a small way prior to September 8, 1942. On September 8, 1942, petitioner executed an instrument entitled "Transfer of Partnership Interest by Gil Graber". By the terms of this Instrument petitioner assigned and transferred to his wife one-half of his "Right, title, and interest in and to the capital of the co-partnership know as Gil Graber & Co., * * * and in and to the assets thereof, * * * effective at the inception date of said partnership business", that one-half interest being stated to be $5,000, or one-half of the $10,000 capital contribution of petitioner. The instrument further stated: "This instrument evidences the aforesaid gift to my wife. My purpose herein is to make suitable provision for her, recognizing her generosity in heretofore making her property available to me in my business needs, to the end that my wife may become familiar as early as possible with the duties, responsibilities, and burdens *277 as well as the benefits of business ownership". On the same date as that of the execution of the foregoing instrument Max Rosenstock and Gill Graber acknowledged, in writing, receipt of notice of the instrument and gave consent to its provisions. Petitioner filed a gift tax return for the year 1942 in which he reported a gift to his wife on September 8, 1942, in the amount of $5,000, stating that it was one-half of his entire capital interest in the partnership of Gil Graber & Company. At the same time Mrs. Graber filed a donee's information return reporting a gift to her by petitioner of an "Interest in the partnership Gil Graber and Co." of the value of $5,000. On October , 1943, petitioner, his wife, and Max Rosenstock executed a written agreement entitled "Memorandum of Partnership Agreement" reciting that "WHEREAS, the parties hereto have heretofore formed a general partnership for the conduct of a livestock business * * * and it is desired and advisable that the rights and obligations of the parties hereto, with respect to the partnership affairs and the disposition of the assets upon the determination thereof be expressed in writing". The instrument then provided that the *278 firm name should be Gil Graber & Company; that its business should be buying, selling, and dealing in livestock; that its principal place of business should be in Denver, Colorado; that all profits and losses should be credited or charged to the capital accounts of the parties in the respective proportions of 50 per cent to Max Rosenstock and 25 per cent each to petitioner and his wife; that upon termination of the partnership the net assets should be distributed in the same proportiosn as those above stated with regard to sharing in the profits and losses; and that the instrument evidenced "the general partnership effective since July 1, 1942 as modified by the agreement of September 8, 1942". An additional contribution of $5,000 to the capital of the partnership was paid in May 1943 by check of Gill Graber on his personal account with The Denver National Bank and at the same time Max Rosenstock made an additional contribution in like amount. During the period from July 1, 1942 to June 30, 1943 Mrs. Graber accompanied petitioner on most of his automobile trips (of which he made many) and performed services and entertained customers as stated above to have been orally agreed upon *279 by her, Rosenstock, and petitioner. Petitioner and his wife also consulted with each other about deals that might possibly be made; and she was with petitioner on these trips from four to six months during the period from July 1, 1942 to June 30, 1943. While on those trips Mrs. Graber on account of an accentuated diabetic condition of petitioner had to administer treatment prescribed for petitioner by his physician who had prohibited him taking the trips alone. While on such trips they frequently stayed at the houses of customers for the purpose of creating friendly relations. While not on such trips and in Denver she also entertained customers. During the year ended June 30, 1943 Gil Graber & Company had an office in the Denver Livestock Exchange Building in Denver and employed an office man, one cattle buyer, one cattle salesman, and three yard men. About 90 per cent of the company's business was done in the country and about 10 per cent in the Denver stockyards. During all this period Mrs. Graber performed no services in the office and received no salary; she could not and did not sign checks for Gil Graber & Company. Petitioner received a salary of $500 per month, of which he *280 turned over to his wife $300 for payment of household expenses. Gil Graber & Company was on a fiscal year basis for the year beginning July 1, 1942 and ending June 30, 1943, and petitioner reported his income on a calendar year basis. Petitioner's wife filed no income tax return for any year prior to 1943. Opinion Petitioner contends: (a) that for the 25 per cent interest in the partnership of Gil Graber & Company transferred to his wife by petitioner by the instrument of September 8, 1942 she contributed ($5,000 of) capital originating with her; (b) that petitioner's wife participated in the control and management of, and performed vital additional services for, the business of the partnership; (c) and that if neither (a) or (b) is established his wife was entitled to the $19,241.41 income of the partnership attributable to her share and which she reported in her return, with the consequence that such income should not be included in petitioner's income as has been done by the respondent. In support of his first contention petitioner relies upon the proposition that the facts show that the capital contribution of Mrs. Graber upon the transfer to her of the 25 per cent interest *281 flowed directly from the original gift of $2,000 made by his wife to petitioner in 1916 while they were living on the farm to be used through a joint account and invested in the cattle business, profits from which were to be shared between them. To establish this proposition petitioner maintains that the original $2,000 and accretions thereto are directly traceable through a period of 26 years so that they emerge as one-half of the $10,000 capital contribution to Gil Graber & Company made through check of August 6, 1942 of Gil Graber on his personal account. The salient facts relating to this proposition as disclosed by the record are: When they left the farm and went to St. Paul and thereafter to Omaha and Denver the $2,000 had increased through the cattle operations on the farm to approximately $3,000 which was on deposit in a joint account of petitioner and his wife or in a safe deposit box with a bank in either one or the other of the cities of St. Paul or Omaha; that about 1932 petitioner opened an account in The Denver National Bank in his own name in an undisclosed amount from an undisclosed source and that such account was closed in October 1938 by transfer of the $782.90 *282 credit balance therein to an account of "Gilmore J. Graber and Ruth Graber"; that thereafter the credit in that account increased to $17,168.05 in February 1942; that in April 1942 the joint account was closed by transferring the credit balance of $2,951.84 therein to a personal account of petitioner; that from that personal account of petitioner $10,000 was paid by his check as a contribution to the capital of the partnership; and that it was through this Denver National Bank joint account that the independent transactions in cattle were operated while petitioner was in partnership with Miller. If petitioner's wife made a capital contribution of $5,000 to the partnership in 1942 it must be because she had an equal interest with petitioner in the $10,000 which he paid by check on his personal bank account as a contribution to the capital of the partnership. In order to establish such an interest in petitioner's wife it would be necessary, as is recognized by petitioner, that the original $2,000, subsequently increased to $3,000 through cattle operations on the farm, be traced through the series of transactions to a point where the $3,000 can be discerned as constituting part, at *283 least, of the funds in the joint bank account in The Denver National Bank through which the independent cattle operations were conducted and from which it may be assumed, for purposes of this opinion, the $10,000 was in effect contributed to the capital of the partnership's check of August 6, 1942 on his personal account with The Denver National Bank. It is impossible for us to so trace the $3,000. We therefore can not say that any part of the original $2,000 given to petitioner by his wife in 1916, or any part of the $3,000 owned by petitioner and his wife when they moved to Denver ever went into their joint account with The Denver National Bank from which the $10,000 investment in the partnership may be assumed to have come. Consequently, also we can not say that any part of the $2,000 or $3,000 originating with petitioner's wife went into the joint account or into the $10,000 contributed to the partnership by petitioner's check for that amount. The mere fact that they had a joint account and that the $10,000 investment may have come from that account is not persuasive, under the facts and circumstances of this case, that petitioner's wife made a contribution of capital originating *284 with her. It is true that the testimony shows that in 1935 Gil Graber made a capital contribution of $5,000 to the partnership in which he engaged with Hall and that in 1937 he made a capital contribution of $5,000 to the partnership in which he engaged with Miller and which apparently endured until sometime in 1942, but the result of these operations and whether they were reflected in the joint account of himself and his wife with The Denver National Bank through which the independent transactions were operated is not shown in the record. As to the additional contribution of $5,000 to the capital of the partnership made in 1943 we are equally unable to trace the wife's original $2,000 or $3,000 as constituting any part thereof. We must therefore conclude that the original interest of the wife in the partnership was acquired by way of gift from petitioner as stated in the instrument of September 8, 1942, and further that she contributed no portion of the additional contribution made in 1943. So far then as petitioner's first contention is concerned, it is decided against him by application of the principles enunciated in ; and *285 . Again applying the principles of the Lusthaus and Tower cases, we must also decide against the second contention of petitioner, that petitioner's wife so participated in the control and management of, and so performed vital additional services for, the business of Gil Graber & Company as to be entitled to the share in that partnership attributed to petitioner by respondent resulting in the determination of the deficiency herein. The facts, that his wife orally agreed with petitioner and Rosenstock to drive the automobile and to look after the physical condition of petitioner on the trips and that she did so constituted nothing more than that she undertook to, and did, perform such wifely duties as would naturally be expected of any wife who was solicitous for the preservation of the health of her husband. Moreover, it would seem that such services rendered accrued directly to the benefit of petitioner personally (and only indirectly to the benefit of the partnership) in keeping him in "fit" condition for the performance of his duties as manager of the partnership which were imposed upon him by the partnership agreement of June 16, 1942. The *286 facts, that petitioner's wife orally agreed to, and did, on the trips, receive telephone calls which she relayed to petitioner and that, on those trips, she kept records of the cattle transactions, afterwards transmitting them to the Denver office, and that she entertained customers on those trips as well as when in Denver, certainly did not constitute performance of services of a managerial character, and we think that they also did not constitute the performance of any services of the character contemplated as vital in the two cited cases. The services were merely clerical in nature and of a minor character; and the entertaining of her husband's customers were social amenities such as might be expected of any wife under similar circumstances. We also think that the fact, that on the trips, petitioner and his wife consulted about cattle deals that possibly might be made, does not bring the wife within the category of one who performed services which were either managerial or vital in their character since it would be only natural and normal that a wife accompanying her husband on long and protracted business trips and being confined to living in hotels and away from their accustomed *287 surroundings would consult as to transactions entered into by the husband who was by special provision of the partnership agreement the sole manager of the business of the partnership. Nor do we think the fact, that before orally agreeing to the partnership petitioner's wife insisted that she decide any argument arising between petitioner and Rosenstock, is of material significance. This indicates, at most, that she was to be merely a referee of disputes between petitioner and Rosenstock, and does not show that thereby she became a partner any more than if petitioner and Rosenstock had agreed that some other party not a member of the partnership should act as such referee would show that other party to be a partner. It may also be noted that the record fails to show that petitioner's wife decided any argument between Rosenstock and petitioner. We are of the opinion, and so hold, that taken separately or altogether the activities of petitioner's wife did not qualify her as a partner in the firm of Gil Graber & Company, for income tax purposes. The deficiency determined by respondent is approved. Decision will be entered for the respondent.